Case number 2010 59 Samuel Dantzler versus Randee Rewerts. Oral argument not to exceed 15 minutes per side. Mr. Martin, you may proceed for the appellant. Thank you. Good morning and may it please the court. Benton Martin of the Federal Defender Office in Detroit, on behalf of Samuel Dantzler. I'd like to reserve three minutes for rebuttal. Fine. Thank you. Complex and easily misleading DNA evidence was at the heart of the case against Samuel Dantzler. But he was deprived of a defense DNA expert for his trial and it's resulted in a life sentence without parole. Two actors here fell short of their duty to protect Mr. Dantzler's constitutional rights, both the trial court and his defense attorney, resulting in a trial process that was fundamentally unfair. I'd like to start with the ache argument and ache holds that a criminal trial is fundamentally unfair. If the state proceeds against an indigent defendant, this is a quote, without making certain that he has access to the raw materials integral to the building of an effective defense. That holding was confirmed in Medina versus California, which which explicitly stated that the holding in ache can be understood as an expansion of earlier due process cases cited in our brief holding that an indigent defendant is entitled to the minimum assistance necessary to ensure a fair opportunity to present his defense and to meaningfully participate in the judicial proceedings. That did not occur here. The. State trial judges limits on funding for a defense expert equated to a denial of the funding necessary for a defense expert. Mr. Dantzler's attorney essentially began the trial begging for money for more money for a defense expert. And I know I quoted this portion of my brief. So you read ache. I mean, ache was about competency, right? And whether someone who has competency issue has the right to a psychiatrist. And you read, you read that to cover every request for an expert by a defendant in any type of case that also happened to be a capital case, but I'm trying to understand how broadly you read ache. The. I don't think it covers every request for an expert because I think that there is a minimum showing that must be made as that it is essential to the defense. But yes, I do read it. And I think the Supreme Court reads it as being broader than just the limited facts of that case. And that's why I pointed to Medina, which describes it as the holding of ache. And really that built on earlier cases that struck at the heart of the right to present a complete defense. And if you deprive someone of this essential basic necessity for the case, and it really was essential to the case here. I know I pointed out that the prosecutor repeated this phrase of the one in two point three quadrillion that Mr. Dantzler's DNA would be on this hat, really equating that with his guilt. And the defense really did nothing to confront that. The defendant defense attorney himself acknowledged early in the case. We need our expert. And this, I think it's clear that this was a situation where the DNA expert on the defense side was absolutely essential to being able to confront the government's case against Mr. Dantzler. Also, do you agree that the difference applies to this issue. To this issue of ache. Yes. Yes. So it seems clearly to apply because the Michigan court ruled on it. Correct. Correct. Right. So the Michigan court doesn't have to be right about how far the Supreme Court's decision goes. They just have to be reasonable about how far the decision goes. That's correct. You're making a very Attractive argument from my perspective. I just wonder whether some reasonable judge couldn't come to a different conclusion in which case you lose on this issue. I would point the court to look back at the Michigan Court of Appeals ruling, the Michigan Court of Appeals doesn't even cite Egg. And it's it's ruling says, well, the trial court decided that a $25,000 fee was exorbitant. That was actually wrong. The Michigan Court of Appeals is wrong about that being the problem. The trial court here said that There was a fee and Don't you run into Harrington versus Richter and those presidents which say we look at the argument that the court could have made and there's an argument that it could have made that would have been reasonable. Maybe I have the case wrong. No, I think that these arguments were made and that the Court of Appeals got it wrong. And so I think that these are arguments that were made. Thank you. Got it wrong, but under it, but they got it. It's got the other argument has to be unreasonable. Correct. And I think that this is Not really. It's regardless of whether the I guess it's regardless of whether the Michigan Court of Appeals even even made that argument. I think that if there's no way to read the Michigan Court of Appeals as a reasonable decision. I mean, that's the heart of our we're not disputing that at the different I thought the standard. You can correct me if I'm wrong. I thought the standard was not today reason reasonably, but was there an argument that was supported their conclusion on this issue that reasonable jurists can make The argument is whether was an unreasonable application of of a None of the cases isn't isn't the standard whether there's a reasonable argument to be made. I mean, I'm sympathetic with you on this position, but I don't see how you can overcome that I'm asking for guidance to get over it just to say that it's wrong and poorly reasoned isn't enough. Cases. You can correct me on the cases. I read the cases you we got we got to say that an argument that I ache or however you say that case doesn't extend to fund DNA funding. Isn't is is is not is not a reasonable argument. That's correct. And I think that it isn't. And I think that that's clear from Medina. So you got to say that the broad reading of of A is the only reasonable reading of a and that's tough, isn't it. That I don't think that's tough. I think that that's what courts have done. I think that's what Medina makes clear and I think it's on the facts of this case. I think that you have to look at the facts of this case. And how essential this particular evidence was to this defendant on the a lot of the Take all your time. I just express that concern. No, I appreciate that. Judge I got another issue here, which may be a stronger, stronger. I don't know. And I would like to move to that briefly, unless there's further questions about it. The second issue is about the ineffectiveness of trial counsel and on the first issue, which is whether the he rendered deficient performance. I think we run squarely into the Hinton case and I know the district court did not cite Hinton and respondent has not cited Hinton in the response brief. It's a Supreme Court case on point that it bears striking resemblance to what we have going on here. Where a defense attorney recognize that an expert was necessary that in that case, they actually did retain an expert, but didn't realize that they could get more money for a better expert and the Supreme Court found that it was deficient performance. Here, we really have no explanation by the defense attorney why he didn't do more to try and go out and get an expert on and We don't have him. There's several steps. He could have tried to make an offer of proof to the district court of why he or the trial court of why he wasn't able to get someone for the funding that had been available, why he wasn't able to retain a third expert. And this is the one place where Ed for deference on the prejudice question doesn't apply because the trial court other the state court did not get to the issue of prejudice. So this court in the district court reviewed the question of prejudice for the purposes of the ineffective assistance claim de novo, and this court also must review that question de novo. And on that question. So it's good. Fair point. What is the, what is the prejudice. What's your best argument as to why the prejudice here. Thank you. And again, I'd point back to Hinton and Hinton, though it didn't hinge on prejudice is sent it back for further findings on prejudice makes clear that serious deficiencies have been found in forensic evidence using criminal trials. That's, that's a quote from from Hinton, and that exonerating evidence has often resulted in the overturning of criminal convictions, and that prosecution experts, what's the exonerating evidence here I mean his DNA was found in the hat. You're not, you're not, you weren't going to contest that it wasn't his DNA right. Well, he was arguing and argue that the test the hat should be retested for that purpose. And one of the things that happened repeatedly in this case is what's been termed by the literature as the prosecutors fallacy, and the prosecutor by repeating over and over again that one in three, 2.3 quadrillion that dancers hat was on the DNA was on the hat. The defense never pointed out that that's not the correct way to read that evidence, that is a, that's the probability of a random match. It's not the probability that his DNA was on that had or that he was guilty and you got to explain to me that difference because I gather that's a fallacy but I'm not seeing what's fallacious about it. So they met me two different people are two different sources have this have the same DNA. So if you get one person's DNA, it's very complex number or whatever it is. Now what are the odds that another randomly found DNA, or some source DNA is from the same person. And the two could only be the same is only like a one and whatever it is chance. So, why isn't that the inquiry, but what's so fallacious about that. Is that the the complexity here and part of this is exactly why an expert would have been needed is the complexity here is that they were comparing this against a CODIS survey of other people with DNA samples, and the. This was a cold case for for four years until they got funding to do this test and do a random testing sample. And with the probability numbers. It is different. That number would look different. If you were to say how likely is it that he's guilty versus how likely is it that this would match a random person. And that's the policy is that it's guilt, rather than the likelihood that this was his DNA on the hat. So if he'd said, if he'd said there's only a one and two quadrillion chance that this DNA came from someone other than, and this sample of defendants, that would not have been fallacious. Right. And, and part of my point is that there's several ways. So just to say, this equates to his guilt well of course that you know that involves a lot of other things. He could have DNA on the hat, and not be guilty. It could be his hat that someone borrowed or something. Is that the fallacy that you're talking about the prosecutors fallacy is that they're just oversimplifying the application of the fraction. Correct, it's a it's an expert to explain that the. I think that there could have been a lot of. I only this is one piece of prejudice. And I see that my time has expired but my answer to that is that there was no if I may answer real briefly, the, the problem was that that didn't happen here. No one explained this problem with the statistics. If you look through the trial transcript, none of that was done, and anything about the testing any complex questions about alleles and about how this testing was done. None of that was done by Miss by the trial counsel during there's some indication that all of that which goes to the one you say the number one and two quadrillion is an is a number that's not fallacious and in its concept. It's just fallacious when you say and therefore there's a one and 2 billion chance that he's guilty which is fallacious. That's a, that's a fallacy that goes with how you use that fraction. But now when you say what the expert would have done was to sort of question whether that's the correct fraction or not. And I'm wondering where it whether there's any prejudice, whether you've shown any prejudice from not being able to show that the fraction was wrong, not whether it was wrongly used in in rhetoric. I have two answers for that one is that he was deprived of the chance to sell that fraction. That is one of the key pieces right but also to. And also to prejudice you got to show that there's some likelihood that it wouldn't improve. I don't think that's correct that we would have had to show that it was proved wrong and I just point this back to him. That makes the point that prosecution evidence has to be tested in order for there to be a fair trial, and I can imagine a case where you're right where the government has some evidence that might have DNA evidence, and they refuse to test it and the defendant says, wait a minute, they should test it or I should get an expert to test that test the evidence to see if my DNA is there, because it might be exculpatory may not be in which case maybe on that proved my innocence but that's not this case where they actually was tested. And you need to come forward with some argument about why that's not speculative as to why additional testing would have given you credible evidence to make a contrary argument that would have suggested innocence. And, and just quibbling with the with the ratio. Seems like kind of debating point a little bit with with the jury, which may be such Roger said, a lawyer could do. But I'm not sure what more you were trying to pull what what what additional DNA evidence or arguments you, you wanted to pull from the additional from the testing that you say, wasn't able to be done because you didn't have an expert. And I think some of those questions are hard to answer without an expert looking at what happened in this case, let's get us kind of catch 22, it feels like I'm saying one of the questions you're saying they're hard to answer fair points, fair points but that's that's 22 I guess. And, and that's exactly the point made in Hinton, I think, um, it says the threats minimized if a defense retains a competent expert. This is a quote to counter the testimony of the prosecution's expert witnesses. And it's when the defense fails to understand the resources it needs for trial that's that's where you show prejudice. I mean we don't have to show in order to get relief but there's a that he's innocent, just that there's a reasonable probability that but for the this defendant, and that a DNA expert would be able to ascertain whether that was different than the one in two quadrillion random people having this DNA because my understanding is that in families there. There are commonalities in DNA. I certainly think that that could be one of the pieces. You know, in some of the statistics. Just so I'm clear you don't argue that though you do make another argument which I thought you were going to raise but you haven't I wonder how it's prejudice. I don't mean to preterm it judge Morris comment I understand the comment, but you don't argue that about the relatives I thought about the relatives to be on are you that part of the problem, Your Honor is that there's so many different pieces here you argued which which had some purchase at least logically, is that when there's when when they're doing this kind of surface DNA that has more than one person that the fraction changes radically, and that that was never presented to the to the jury. Right. That's right. That's not the prosecutors fallacy. No, that's not that's a that's a technical fallacy with how precise you can be when it's contact DNA, and when it's multiple people. But now I'm wondering, you know, given that that has a certain purchase to it. How much was that raised is that for the first time in your brief to us. The, the fact that this was this unique type of there's there's two pieces that it was touched DNA, and that it was multi. It was multi source DNA, and both of those can contain multiple pitfalls. And none of that was flushed out for the jury. In addition to what judge Moore said about the problem with it. Was it given to the district court. No, and there was no trial counsel, there was no attorney in the district court, the district court did this without without counsel and only appointed us for the purposes of this appeal. The Mr. Dantzler though if you review his 6500 motion seems to be getting at exactly what I'm talking about now, where he says that the adversarial process can't have been said to function properly when the prosecutor was arguing science, and the I mean there is a million different ways that that's an exaggeration but there are several different ways, the family. Let's not have too big the numbers too big of a number a quadrillion quadrillion. Yeah, there's, there's all these different ways that a that a expert could have looked at it I mean from doing trial level cases I know sometimes you don't know exactly what the weakest point is until you have an expert go in there and look at it and it could have been the family point, this was all this case involves six people that were arguably from Mr Dantzler's family that was the government's theory at least, who went to this apartment, and his son was implicated and ultimately pled guilty to pointing people to where this victim was, um, you know that certainly could have been an avenue for an expert to look at. And I think that that's exactly the point there's several ways that an expert could have helped in this case, and it wasn't there and I some of the technicalities of this argument. I've fleshed out in my brief about the, what we call these things that it was multi source DNA that it is a touch sample which is really dangerous type of evidence because of the reasons that we fleshed out if there's no way to confront it. But, you know, to Mr Dantzler in his pro se briefing he said they were arguing science, and I had nothing. And I think that's the same exact argument just I've put details to it. Thank you. We've taken you beyond your time but that is because of our questions. You have your time. Thank you, Your Honors, may I please the court Linus Banghart Lynn Assistant Attorney General on behalf of the respondent warden respectfully requesting that this court affirm the district courts denial of habeas relief. I'm going to begin with this point. So I don't want it to get lost about this argument being presented in different ways in the state courts in the district court and here, and I don't think that in my brief I've really kind of raised it as a. This is a new argument a new claim that we haven't really raised this as an exhaustion point. But what I think is happening is that sort of new facts and new ideas are being added to bolster it and I understand my brother counsel's argument that he was represented he was not represented in the district court and that he's entitled to liberal construction of But my concern, my chief concern is less with the difference in the arguments between the district court and here. That is a concern, but my chief concern is the difference in the arguments presented between the state courts and the district courts and the state courts in here. And I think that what is happening essentially is that the defendant has painted a picture and shown it to the state court and said, doesn't this look like a denial of due process doesn't this look like a denial of the right to counsel. And then the state court says no. And then he presents a different picture to this district court and says, well, doesn't this look like a constitutional violation. And don't you think it was unreasonable for the state court to say no. And so I think this is really more of a pinholster point is that you when when this court's job is to review the reasonableness of the state court's decision. You have to look at what was given to the state court. And it's not a matter of blame for anybody. It's not a matter of well Dantzler didn't present it this way. So we're going to punish Dantzler by not considering it. The point is, we're, we're evaluating what the state court did right we're not evaluating whether this was a constitutional violation we're evaluating whether the state court acted unreasonably in adjudicating it the way it did. And so when all of these new studies and new articles and new information gets added to it. And then the claim is well the state court was unreasonable for denying relief, based on all this information that some of it wasn't presided some of it couldn't have been provided to them. I think that's, I think you have to review this claim on the terms I think that's what pinholster says on the terms that it was presented to the state court. So if you could focus, if you could focus on the IAC claim ineffective assistance of trial counsel. Yes, I'd be glad to speak. I'm sorry. Is the key state court decision. This opinion by Judge bill that's in 2015. Is that the, is that the decision. Last state court decision on IAC of trial counsel. The last reason decision. Yes. And so that is the one that that yes that's the one that we're relying on. And I think as to that point I'm going to talk a little bit about procedural default and the error that the district court made, which was in sort of assuming that this had to have been either a procedural default or a merits adjudication. And if you proceed under that assumption then I think the district court got it right, the tie has to go to merits adjudication but the problem is that that assumption is wrong. That an opinion can be both a court can rule that a claim can be denied for reason a and then the alternative reason be, I think courts do that all the time we see that there was no error here and then the alternative if there was error, it was harmless. This is the same thing. This is procedurally defaulted, and it's also without merit, and there's nothing ambiguous about the order in this case that just saying in that circumstance we can review, either ground, or we, we, in that circumstance the petitioner has to overcome both the petitioner has to overcome both. What's your best case for that proposition. Well, I don't. Maybe maybe a point so obvious but I. Yeah, I mean I think that my, my, my case for the procedural default point or would be the cases on on procedural default that you know that that he has to overcome cause and prejudice. And I think that sometimes it's sometimes it's one or the other that's fairly straightforward. I've seen is where we have both and we just sort of went to the merits issue. Right. And that's the thing is a court is allowed to simply say, Well, I think the default is too complex here and I'm going to sort of ignore the default, because I'm denying relief on the merits and that's permissible to do. You know, I don't prefer that because then when we get up here we have to say, Well, you know, we have, we have two defenses here and one of which didn't get ruled on, you know, and so, but here the district court explicitly said there is no procedural default and that was error, because the court started out the state court started out by saying, Here's the rule 6.508 D three not just D but D three. Here is what the defendant is required to show under this rule, good cause and actual prejudice because he could have raised this claim on direct appeal and didn't. Right. And then goes into discusses that good cause can be shown by ineffective assistance of appellate counsel holds that there was no ineffective assistance of appellate counsel and then says the defendant has not shown good cause or actual prejudice and for all the aforementioned reasons, I'm denying relief. Right, so there's just no ambiguity. Here's the rule, here's what he needs to show he hasn't shown it, and this is one of the reasons, right, all the aforementioned reasons that I'm denying relief. There is no argument here that there is any ambiguity. The only way you can find that there's no procedural default is if you sort of adopt this fallacious either or right that a court can't rule that a court can't deny a claim on two different grounds. I would like to ask the question following up on that but I'd like to hear Judge Moore's question. I was going to ask in the section of that judge bills decision involving ineffective assistance of trial counsel looks to me that that is based on the merits but I'm, is there some part of that section of the opinion that is saying that they're relying on procedural default. No, no part in the in the section of that opinion that discusses ineffective assistance of trial counsel that section does not discuss procedural default. No, I'm not relying on that section of the opinion for the procedural default I'm relying on the beginning of the beginning of the opinion, which is like the fourth paragraph, and then the last paragraph. Yes, well the last two paragraphs I think I don't have it right in front of me but it's the one that says he hasn't shown cause and he hasn't shown prejudice, and then the paragraph that says for all the aforementioned reasons right so that makes clear. And so we, I, we do see cases where they just kind of recite 6.508 d three, and then they never kind of come back and say that that's a reason why they're denying relief and so in those cases I usually I'm conservative and don't argue default and just rely on the merits but in this case he says, all the aforementioned reasons so when I said that there was no cause and no prejudice, I'm relying on that as one reason to deny relief because, as I told you at the beginning of the opinion, a defendant has to show those two things. Right. And so, this is where does it show, where does he show that there was good cause that there was no good cause, well, he says that, I mean the only asserted grounds for good causes is ineffective. Council, this is the standard. Well he says there was, I'm sorry, go ahead. And then later on say there was no good cause. Right. I don't, I don't know whether that applies to the first of these things that's in the, in the, in the rest of the opinion or the second or the third, or all three, but it couldn't apply to all three. No, it couldn't apply to the ineffective assistance of appellate counsel because the ineffective assistance appellate counsel was raised to show good cause. And so when the judge says there is no ineffective assistance of appellate counsel that finding supports a finding of no good cause. And there was no other issue of ineffective assistance of appellate counsel was not itself subjected to the good cause requirement, because there was no default with respect to that. Correct. You can't default on that. It's as if these three substantive sections weren't there, because all they do is deal with the merits and the last sentence of each one says the merits are without merit, and you cannot one of them. One of the three absolutely has to be on the merits. They all are on the merits. Absolutely. They're all on the merits. So, for purposes of saying that this opinion applies D3B, we have the statement that that's the standard. And at the very end, you say he has not shown good cause, but where has he shown that there's, that he, that he failed to raise it below. Well, he, you mean, failed to raise it on direct appeal. I mean, he did fail to raise it on direct appeal. That's why. But the opinion doesn't say that. No, but. You could say that he relied on that if the opinion doesn't say that. It looks like this is one of these things that you see in some agencies where there's a pro forma form, and they filled out the first part, and they filled out the last part, and then they did something else in the middle. I think when the trial court says. Which would make it ambiguous if you ask me. I understand. I think when the trial court says, if you're raising a claim that you could have raised, or could have raised on direct appeal, you have to show cause and prejudice, and then you discuss the claim, you discuss one of the possibilities, the only one raised for showing good cause. You say that that's without merits and then you say he hasn't shown good cause and actual prejudice. You never say that he procedurally defaulted in the first place. Well, but that's true. I mean, I think that it kind of, yes, I think that it kind of goes without saying when it is true that he never raised it on direct appeal. I think if he had raised it on direct appeal. In order to win on that issue, you have to say that it goes without, that he said it without saying it. I don't think he didn't need to say it. He said that the rule, he applied the rule to the claim that wasn't raised on direct appeal and said this is a rule that applies to claims that weren't raised on direct appeal but could have been. And I'm applying it to these claims. I don't think that he has to go through the extra step of saying these claims could have been raised on direct appeal but weren't. I think that where it is true that they could have been raised on direct appeal and weren't and where it's obvious that they could have been raised on direct appeal and weren't. And the court is applying the rule that applies only to those claims, or only to that. I understand the argument. I'm up in the air on that argument. What if you lose on that argument? Yeah, I'll move on on that. I think that the strongest argument we have is on prejudice clearly. I don't concede to performance but I'm going to talk about prejudice because I'm going to talk about the burden here, which is sort of the, I think that, with respect, my brother counsel kind of wants to skip to the trial where the expert testifies and says, well actually it's not 2.3 quadrillion it's blank, right, we don't have the blank filled in I think that's a problem. What is the number is it a billion is it a trillion. I don't know. And, and therefore the, and then the jury says well if the DNA evidence is is subject to some dispute. There's a reasonable probability that he's not guilty. And I think that skips too many steps right we don't have an affidavit from an expert we don't have hearing testimony from an expert we don't know if he could have found an expert. If he had kept trying, who would have been able to get engaged for a reasonable fee going to get an affidavit from an expert if he never allowed to retain one. Well, he could have gotten it on on appeal and he could have gotten it on collateral review, I mean he could have gotten it on habeas review and I mean we would raise that pinholes argument but I mean he hasn't even tried. I mean I'm a little sympathetic in that, in some ways you're right the defendant doesn't know how the arguments that maybe they have available to to him or her until they actually consult with someone just like a client doesn't know what arguments they haven't really talked to a lawyer. But your point is, whatever shortcomings. There may have been in the district court in terms or in terms of the trial court in terms of the defendant not articulating all the reasons why I need an expert or all the shortcomings, those can be cleaned up at some point throughout the subsequent proceedings. In other words, it could have given us a little more little more explanation of what the expert might have done and how that would have influenced the trial. Yeah, I mean not just explanation but some kind of evidence, some kind of evidence of what an expert would have testified to and why it would have made a difference we don't know. Right, we have a lot of articles right and studies that say well these numbers are bad and there's different numbers but we don't have an expert who looked at this case and said well if I had been called I would have testified to. And we just don't have that would be able to do that given that my understanding of the facts was that during the trial. One of the state's witnesses touched the hat such that it could no longer be productive of any reliable DNA evidence. Right, and I understand, I'm not saying that we did a couple things. First of all, I'm not saying they put it this way I'm not saying that that we need an expert who says that I would have done the retesting and that based on the retesting it would have shown this. I don't think that that's his argument I think that the sort of young blood argument has is gone I don't think that that's before this court I what I see dancers argument now is being is that even without the retesting of the hat. That that that the that an expert could have sort of demolished the state's DNA claim, but we don't. Again, I come to the point that we don't have any evidence that that would have happened. That that that an expert could have been retained at all. And then an expert could have testified in a way that was damaging to the state's DNA case. And with my sort of last remaining time I would also point out that the DNA was not as crucial or as critical. I mean dancer could have easily said, I mean, look, the jury knew these were his family this one of these people was his son, they could have borrowed his hat, it could have been his DNA on the head he even testified at trial, maybe I wore this hat. Right. And so the fact that his DNA was, yes, I understand the prosecutor referred to the DNA of many times but this court is not going to defer to the And say, you know, he could have this somebody could have borrowed his hat that had his DNA evidence. Instead, you've got the motive, you've got the car, you've got the weird inconsistent testimony about the car. The other strong evidence. I see my time's expired. I'd be glad to I'd like to ask a question. Unfortunately, I'm in the middle of a fire zone and there's a lot of sirens. Can you hear me. I can hear you fine. Yes. Okay. I've been trying to mute when the sirens go by, which they seem to be frequently going by. I have kind of a background question is judge more presiding judge will let me sort of ask, please. It's hard. I'll try. It's hard for me to see how the jury came to the conclusion that they did how they came to the conclusion that this person was there, based on a hat. That may have been his hat that that the person who wore it grabbed on the way out the door. Right. I, I agree. I think how did the jury what what what other evidence was there that this person was actually there. It seems like the half DNA or not, it's kind of weak evidence, but was there something else going on there that made the jury believe that this person was there. Yeah, and I agree that the hat was relative the DNA was relatively weak evidence. I think that the strongest piece of evidence was probably the fact that it was a car that was associated with the defendant that was driving these people around. The people were related to the defendant. One of them was his son. The defendant had the motive because the person who they were sort of avenging by killing this victim was related to the defendant and related, obviously, to the defendant's relatives. You had sort of some weird answers at trial, which I think that the jury could have used to say that's the guy doesn't seem trustworthy. For example, he testifies that he had a gold colored car. Right. And it said gold colored not gold. Right. And then later on, he says, trial. And so then later on, he says, well, I thought you said an old car. I not a gold car, but it wasn't gold. It was gold colored so that and then there was the Court of Appeals noted that there was testimony that while he was still friendly with the victim, even though the victim had beat up his relative. Now, the Court of Appeals sort of says that as sort of favorable evidence to him. I kind of take it as unfavorable because it seems untrustworthy. I think the jury could have kind of gone either way on that piece of evidence. I think the fact that he had the motive, the fact that the car was there, and it was his car. All together, and then the other things that I've mentioned. Would that be enough to convict? It was held to. Yeah, I think it would be enough to convict. Without the DNA. Without the DNA. No, I understand the insufficiency claim did take the DNA into account. So I can't say, well, it was helpful, as I almost said. But no, I think even without the DNA, it's constitutionally sufficient evidence to allow a reasonable trial. But you're basically relying on motive plus the car. Those are the strongest pieces. Sorry? Sorry, those are the strongest pieces. That's not everything, but yes. And motive is, I mean, motive is not an element of any crime, but it is relevant in any crime. And the fact that his relatives, I mean, that we know that the other people involved were his relatives and that Turner was his relative. And certainly you're not, you can't convict somebody because their relatives were upset or their relatives participated in a beating if that person wasn't there. No, no, I agree. And the motive alone is not enough. The car alone, probably not enough. I think that when you take them all together, even without the DNA, including his trial testimony, and sort of the inconsistencies that he gave, I think that all of it really stacks up. And the inconsistencies, you mentioned the gold versus old. Was there another inconsistency? There was an inconsistency. I don't think it was his testimony versus his alibi witness where I think one of them testified that, no, he never had a black knit hat that was like that. And he testified, yes, I had a black knit hat that was like that. I don't recall the page of the record where that was, but that was something that was noted as being inconsistent. And again, it's like, if he didn't have it, that's fine. If he did, that's fine. But I think the jury has to wonder, well, why are we hearing two different stories about the hat? It sort of all adds up together. And I think the DNA, I agree with Judge Rogers, it shows that he wore this hat at some time, but these were his relatives that carried out this attack clearly. Maybe he just drove them there. Maybe he was there in there. Maybe he was the leader. We don't know. I'm curious, and I realize I'm asking a question that may not be in the record, but do you know whether the other relatives were connected to the murder? I do not know. Thank you. Any further questions? Thank you, Your Honor. Martin, you have three minutes. Thank you, Your Honor. I'll address briefly the issue about the state court ruling on the merits versus procedure. I agree with Judge Rogers and I wanted to point out that the district court did as well. And the district court found ambiguity in this decision. And I think that what the district court overlooked was that the ambiguity should run in Mr. Gantzler's favor and that this should be treated as a decision on the merits. In regards to whether it should be due any deference, I would point this court squarely to Hinton. And I agree with Judge Rogers as well that this order from the trial judge on the 6500 motion strikes me as a pro forma order. And that's essentially what the district court here said. It struck that court as a pro forma order where there's very little analysis of the actual facts of this case. And it essentially says that this was a trial strategy reason. And I don't see how that can be reasonable, given the conversation that happened at the start of the trial in this case, where Mr. Gantzler's attorney is saying he's in the middle of a sentence when the jury is called in about the DNA expert. And he's saying, you know, she'll be here. We don't have the money. She was demanding and then the sentence gets cut off mid sentence and in walks the jury. And so I don't see how we can call that any sort of reasonable trial strategy. And as to the prejudice piece, I would again point this court to Hinton and the language in Hinton about prejudice and talking about the need for experts on the defense side in order to ensure that people have a fair trial. That it's not just about guilt and innocence in the sense of a defense expert proving innocence. It's about testing the state's evidence. And that has never, never happened here. I guess the other side was, or maybe I'm making the point, but setting aside that as a certain illegal reality that these things can be important that you've had or your clients had three or four different levels of proceedings to maybe better articulate either through an expert or other ways, what concrete things could have happened had he retained an expert. And that it feels like we're kind of spitballing on this, this whole argument about things maybe that could have happened as opposed to things you really could have, your client could have documented before today in a little more persuasive way. I'm not sure how he could have, you know, he has a claim of ineffective assistance of appellate counsel and that appellate counsel didn't do a job. He actually filed a complaint with the assigned appellate counsel system about that lawyer on his direct appeal. And then his 6500 motion was pro se and he asked for an evidentiary hearing, but he wasn't given it. He just got this pro forma order. So certainly in the 6500 they could have opened it up and said, look, the court's going to appoint somebody to look into this. I mean, that didn't happen. So I think that's the opportunity that he should should have had, and that that's your office. I mean, you're just a very capable group of lawyers, but your office directly could have done some of that. Yes, and we but we were just pointed for the purposes of this appeal on if the court wants to remand for further factual finding on prejudice, that's certainly something you could do. And that's. And thank you honors. Thank you both for your argument, the case will be submitted.